[Cite as *Mosley v. Cuyahoga Cty. Bd. of Mental Retardation*, 2011-Ohio-3072.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96070**

## PAUL MOSLEY

PLAINTIFF-APPELLANT

vs.

## CUYAHOGA COUNTY BOARD OF MENTAL RETARDATION, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-704155

**BEFORE:** Rocco, J., Sweeney, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 23, 2011

**ATTORNEY FOR APPELLANT**

Steven J. Moody
1816 Corning Avenue
Cleveland, Ohio 44109


**ATTORNEY FOR APPELLEES**

John D. Latchney
Tomino and Latchney
803 E. Washington Street
Suite 200
Medina, Ohio 44256

KENNETH A. ROCCO, J.:

{¶ 1} Plaintiff-appellant Paul Mosley appeals from the trial court orders that granted summary judgment to his employer, defendant-appellee the Cuyahoga County Board of Mental Retardation[1] ("the agency") and two of the agency's managers, defendants-appellees John McLaughlin and Barry Kuzmickas, and dismissed all of Mosley's claims against them.

---

[1] This is the designation Mosley provided in his complaint. The record indicates the agency's proper title is "the Cuyahoga County Board of Mental Retardation and Developmental Disabilities."

**{¶ 2}** Mosley presents five assignments of error. He asserts: 1) the trial court improperly utilized a "nunc pro tunc" order to reverse its previous decision to deny appellees' partial motion for summary judgment; 2) the trial court improperly dismissed his "retaliation" claim; 3) the trial court improperly dismissed his race and gender discrimination claims; 4) the trial court improperly dismissed his breach of employment contract claim; and 5) the trial court improperly dismissed his claims of employer intentional tort.

**{¶ 3}** Upon a review of the record pursuant to the standards of Civ.R. 56(C) and (E), this court finds that none of Mosley's assignments of error has merit. Consequently, the trial court's orders are affirmed.

**{¶ 4}** The following facts of this case are undisputed. The record reflects the agency hired Mosley in August 1987. He worked as a "Support Administrator" ("SA"), based at the office in Highland Heights, Ohio. His position required him to travel to homes and schools to aid the agency's clients. Mosley worked for many years without incident.

**{¶ 5}** The agency issued an "employee handbook" to its employees.[2] Under the heading "Driving Record Regulations," the 2005 version of the handbook stated in pertinent part as follows:

---

[2]The face page of the employee handbook indicates at least some of the agency's employees were a part of the Service Employees International Union ("SEIU"), District 1199. Although the agency purported to attach to the motion for

**{¶ 6}** "These regulations apply to employees in positions which require driving on-the-job * * * ."

**{¶ 7}** " * * * .

**{¶ 8}** "Staff members are required to report driving charges for major violations, such as DUI/DWIs to the Human Resources department."

**{¶ 9}** " * * * .

**{¶ 10}** "If your * * * driving privileges are suspended, you will be subject to discipline. Prior to the pre-disciplinary hearing, you may be assigned for up to thirty days in a position without driving responsibilities. Depending on the facts, you may be suspended or demoted for this violation. * * * .

**{¶ 11}** "If reasonable arrangements can be made for the staff member to perform effectively, a staff member will retain his/her position while on-the-job driving privileges are suspended. However, if on-the-job privileges are suspended, the CCBMR/DD may transfer the staff member to any non-driving position for which the staff member is qualified. The staff member will receive the pay rate for the position to which he/she is transferred. * * * .

partial summary judgment a copy of the collective bargaining agreement ("CBA") under which the employer and employees functioned, that document does not appear in the record. Mosley admitted in his deposition testimony, however, that his position as an agency SA made him a union employee, and that he at one time acted as a union representative for the agency's employees.

{¶ 12} "Another option for staff members will be to obtain business use insurance with the CCBMR/DD named as the 'other insured' and with a coverage limit of $500,000. * * * This option will be available only to staff members who have

{¶ 13} * * 2 points or less [on their driving record]. * * * ."

{¶ 14} Under the heading "Employee Rights," the handbook stated with respect to disciplinary situations that the employee had a "right" to a predisciplinary conference "as soon as possible after the incident in question." The agency would send a written notice of the conference and its purpose, the employee could have representation from the labor union, and the agency would send a written report of its decision. If the employee wished to appeal the decision, the employee was directed to review "Article 10 of the SEIU District 1199 - CCBMR/DD Labor Agreement."

{¶ 15} Mosley received a citation for DUI on March 14, 2006. He reported the incident to his union representative and to Alan Wilkes, the agency's "regional manager" for SAs. Mosley did not make a report to McLaughlin, who was the Director of the agency's HR department.

{¶ 16} On May 3, 2006, the day that Mosley was convicted of the offense, he reported the incident to McLaughlin. That same day, the judge who presided over Mosley's case granted occupational driving privileges to him.

Thus, for nearly two months, Mosley had been performing some of his job duties for appellee while driving with a suspended license.

{¶ 17} When apprised of Mosley's situation, McLaughlin requested Roslyn English, the agency's Employment Manager, to find a position for Mosley that did not require him to drive. English knew of an opening, viz., the agency was seeking a candidate for the position of "Eligibility Specialist." However, this was both a non-union position and, for Mosley, would constitute a demotion.

{¶ 18} McLaughlin notified Mosley of the opening and of his decision to pursue a disciplinary action in order to place Mosley into the lower position. Mosley filed no grievance with the union over this development. Rather, his reaction was to request McLaughlin to treat the demotion as voluntary on his part. This would prevent any disciplinary action from appearing in his employment record. McLaughlin agreed.

{¶ 19} Mosley's transfer officially took place on June 5, 2006. He signed a document dated June 13, 2006 that memorialized his "official notification of [his] voluntary demotion to the temporary position of Eligibility Specialist" at the agency.

{¶ 20} Mosley apparently was unhappy in this position. The record reflects that problems with his job performance began to surface.

Beginning in December, 2006, these problems were memorialized in agency emails. Inter-agency communications between Mosley and his supervisors indicate Mosley sometimes left work early without making arrangements with co-workers to provide "intake coverage" for new clients, failed to notify co-workers of his planned absences, failed to return important telephone calls, and fell behind in his duties.

{¶ 21} The record also reflects Mosley's supervisors attempted to resolve these problems. On January 31, 2007, Mosley's immediate supervisor, Timothy Lewicki, met with him to discuss his concerns, propose some solutions, and tell him Lewicki wanted to "meet with him weekly to see how we could get him caught up."

{¶ 22} Nevertheless, Mosley's problems continued. In February 2007, Mosley had a dispute with a co-worker. The agency's Labor Relations Manager, Barry Kuzmickas, became involved. At that time, when Mosley was participating in company conflict resolution meetings, he became convinced that his transfer had been, despite the language of the June 13, 2006 document, an unwarranted disciplinary action taken against him.

{¶ 23} The record reflects Mosley originally filed this action in August 2007 but the case was dismissed without prejudice in September 2009. The following day, Mosley re-filed his action, which is the instant case.

{¶ 24} Mosley alleged in his complaint that his demotion was unlawful and discriminatory in nature. He set forth ten causes of action against appellees, as follows: 1) race discrimination; 2) sex discrimination; 3) breach of employment contract; 4) civil conspiracy; 5) violation of due process under Ohio law; 6) failure to train supervisors; 7) age discrimination; 8) retaliation after demotion; 9) "outrageous" conduct; and 10) violation of agency due process.

{¶ 25} After appellees filed their joint answer to the complaint, they filed a motion for summary judgment as to six of Mosley's claims. Appellees argued that Mosley could not sustain any of his causes of action for breach of employment contract, civil conspiracy, due process violations, retaliation, and "outrageous" conduct. Appellees supported their argument with a copy of the employee handbook, affidavits from McLaughlin, Kuzmickas, and English, and a copy of Mosley's deposition testimony with its attached exhibits.

{¶ 26} Mosley filed a brief in opposition to the motion. He argued summary judgment on those claims was inappropriate and, as support for his argument, he attached his affidavit to his brief.

{¶ 27} Mosley's affidavit, however, contained contradictory assertions. For example, although he averred he was demoted "as soon as he got his DUI," he also averred he "never received any discipline" until he "filed a

lawsuit and a charge with the EEOC." Mosley also provided no dates for these occurrences, but, as previously stated, the record reflects he originally filed this action in August 2007.

{¶ 28} Appellees filed a reply brief, but did not supply additional evidence. On August 27, 2010, the trial court issued a journal entry denying appellees' partial motion for summary judgment without opinion. Previously, the court had scheduled the case for trial to be held on September 22, 2010.

{¶ 29} On September 15, 2010, appellees filed two separate motions in limine. Appellees sought in the first to prevent Mosley from introducing evidence with respect to Counts 3, 5, 8, and 10, which appellees referred to generally as the "due process violation" claims.

{¶ 30} Appellees stated in this motion that Mosley had filed an action in the federal district court that the court subsequently had dismissed with prejudice. Appellees argued that, therefore, these claims were barred by the doctrine of res judicata. Alternatively, appellees pointed out that the record demonstrated Mosley failed to avail himself of his rights under the CBA. They argued that he had thus waived these claims.

{¶ 31} In their second motion, appellees sought to prevent Mosley from introducing evidence of events that occurred at the workplace subsequent to

the date Mosley filed his complaint in the instant case. Appellees argued such evidence would be irrelevant and potentially prejudicial.

{¶ 32} On September 16, 2010, the trial court issued an order that granted summary judgment to appellees on most of Mosley's claims. As to Counts 3, 5, 8, and 10, the trial court granted summary judgment to appellees without opinion. The trial court further "dismissed" Count 7 "pursuant to R.C. 4112.02(N)," and "dismissed" Counts 1 and 2 "because of a failure of direct evidence of discriminatory intent." The court's order stated that Counts 4 and 9 were "denied," on the basis "of immunity from intentional torts." Appellees apparently took this to mean that Counts 4, 6, and 9 remained for the September 22, 2010 trial.

{¶ 33} Two days before the scheduled trial date, appellant filed a request with the court for leave to amend his complaint. One day before the scheduled trial date, appellees filed a notice of appeal in this court from the September 16, 2010 order pursuant to R.C. 2744.02(C). The appeal was assigned App. No. 95745.

{¶ 34} While App. No. 95745 was pending, the trial court issued an order "nunc pro tunc" with respect to the September 16, 2010 order. This indicated that Counts 4 and 9 were actually "dismissed," rather than "denied."

Subsequently, this court granted the agency's motion to dismiss App. No. 95745.

{¶ 35} When the case was returned to the trial court, Mosley filed a request to "strike" appellees' "motion for directed verdict." He apparently believed appellees had filed such a motion during the pendency of App. No. 95745. In response, appellees filed an opposition brief noting that they had not done so, but also noting that only Count 6 remained for disposition. Appellees argued they were entitled to summary judgment on this claim, as well.

{¶ 36} On November 8, 2010, the trial court issued the final order in this case. The court granted summary judgment to appellees on Count 6. The trial court indicated this entry was its second order "nunc pro tunc" to the September 16, 2010 order.

{¶ 37} Mosley filed a timely notice of appeal from the trial court's orders. He presents five assignments of error.

{¶ 38} "**I. The trial court improperly entered nun[c] pro tunc orders granting Appellees' motion for summary judgment to correct its prior judgment entry actually denying the same Appellees' motion for summary judgment, as the purpose of a nun[c] pro tunc order is restricted to placing upon the record evidence of judicial action**

which was actually taken, i.e., supplying omissions in the judgment entry or correcting clerical errors — not what the court might or should have decided or intended to decide — because a mere erroneous judgment cannot be corrected by nun[c] pro tunc.

{¶ 39} "II.   Even if the nun[c] pro tunc orders were proper — and they are not — the trial court improperly granted Appellees' motion for summary judgment on Appellant's retaliation claims [sic] where it is clear that Appellant was disciplined, terminated, and demoted because of the filing of this lawsuit.

{¶ 40} "III.   Even if the nun[c] pro tunc orders were proper — and they were not proper — the trial court improperly granted Appellees' motion for summary judgment on Appellant's race and gender claims by dismissing Counts I and II 'because of a failure of *direct* evidence' where the standard of review is either *direct* or *indirect* evidence and where Appellant has shown *both* direct evidence of intent to discriminate on the basis of race and gender as well as indirect evidence of intent to discriminate.

{¶ 41} "IV.   Even if the nun[c] pro tunc orders were proper — and they were not proper — the trial court's grant of summary judgment on Counts III, V, VIII and X relating to 'due process' does

not take into consideration the 'breach of contract' claim or the retaliation claims [sic], which stand on their own in Counts III, VIII, and therefore remain.

**{¶ 42}** "V.   The trial court erred by ruling that public employees are immune from intentional torts and therefore all claims which arise from the employer-employee relationship should not have been dismissed on summary judgment including Appellant's emotional distress claims [sic]."

**{¶ 43}** Mosley argues in his first assignment of error that the trial court's use of "nunc pro tunc" to grant summary judgment to appellees on all of his claims was improper.   Although his argument is correct, it does not avail him in this case, since the trial court acted within its authority for a different reason.

**{¶ 44}** The trial court's use of a nunc pro tunc entry is restricted to placing upon the record evidence of judicial action that has been actually taken; thus, it can be exercised only to supply omissions in the exercise of merely clerical functions.   *Jacks v. Adamson* (1897), 56 Ohio St. 397, 402, 47 N.E. 48.   The function of nunc pro tunc is not to change, modify, or correct erroneous judgments, but, rather, to have the record speak the truth.   *Ruby v. Wolf* (1931), 39 Ohio App. 144,177 N.E. 240; *Dentsply Internatl., Inc. v.*

*Kostas* (1985), 26 Ohio App.3d 116, 498 N.E.2d 1079. A court may not, therefore, by way of a nunc pro tunc entry, enter of record that which it intended but, in fact, was not made. *Pepera v. Pepera* (Mar. 26, 1987), Cuyahoga App. Nos. 51989 and 52024, quoting *Myers v. Shaker Hts.* (June 7, 1990), Cuyahoga App. Nos. 57005 and 58056.

{¶ 45} In this case, the trial court meant in its September 16, 2010 order to "dismiss" some of Mosley's claims, but used the word "denied" instead. These two legal concepts are not interchangeable, so the trial court acted inappropriately on September 23, 2010 when, despite appellees' appeal of its original decision, the court purported to use nunc pro tunc to place into the record its actual intent. See, e.g., *Doe v. Catholic Diocese of Cleveland,* 158 Ohio App.3d 49, 2004-Ohio-3470, 813 N.E.2d 977, ¶15; cf., *Garofolo.* The trial court's use of the phrase "nunc pro tunc" in its November 8, 2010 entry similarly was inappropriate.

{¶ 46} Nevertheless, the trial court's September 16, 2010 ruling *denied* partial summary judgment to appellees. Since all the claims thus remained pending, the trial court retained jurisdiction over those claims. Consequently, the court could properly reconsider its interlocutory ruling and enter any lawful order as to those claims. *Garofolo v. Fairview Park*, Cuyahoga App. Nos. 92283 and 95021, 2009-Ohio-6456, ¶14. The same

analysis applies to the trial court's final judgment entry of November 8, 2010, since the trial court had not previously disposed of Count 6, the last remaining claim.

{¶ 47} Accordingly, Mosley's argument is correct, but his first assignment of error is nonetheless overruled.

{¶ 48} In his second, third, fourth, and fifth assignments of error, Mosley argues summary judgment for appellees on his claims was unwarranted. He contends that since the trial court's analysis was flawed, its result should be reversed.

{¶ 49} However, appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Zemcik v. La Pine Truck Sales & Equipment* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The appropriate test is as follows:

{¶ 50} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369-70, 696 N.E.2d

201. See, also, *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

{¶ 51} The parties moving for summary judgment bear the initial burden of showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274. Once the moving parties satisfy that burden, the nonmoving party "may not rest upon the *mere allegations* or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." Civ.R. 56(E) (Emphasis added.)

{¶ 52} Since review of summary judgment is de novo, the reviewing court may affirm the trial court's decision for different reasons. *Cordray v. Internatl. Prep. School*, 128 Ohio St.3d 50, 2010-Ohio-6136, 941 N.E.2d 1170, ¶31; *Anderson v. Snider Cannata Co.*, Cuyahoga App. No. 91801, 2009-Ohio-4363, ¶31.

{¶ 53} Mosley argues that summary judgment on his retaliation claim was unwarranted, because "it is clear [he] was disciplined, terminated, and demoted because of the filing of this lawsuit." This argument is rejected.

{¶ 54} Mosley never amended his complaint to raise any issue regarding "retaliation" taken against him based upon this lawsuit. Rather, he asserted in Count 8 that, "[a]fter [he] complained to [appellees] about the loss of his rights to due process regarding his demotion," appellees "issu[ed] discipline, chang[ed] his office assignments, workspace, and parking and * * * other conditions of employment with no justifiable business reason."

{¶ 55} A party cannot raise any new issues or legal theories for the first time on appeal. *Dolan v. Dolan*, Trumbull App. Nos. 2000-T-0154 and 2001-T-0003, 2002-Ohio-2440, ¶7, citing *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 322 N.E.2d 629. Reviewing courts are not required to consider claims the plaintiff failed to raise in the trial court. *Thomas v. Univ. Hosps. of Cleveland*, Cuyahoga App. No. 90550, 2008-Ohio-6471, ¶37.

{¶ 56} Since Mosley's retaliation claim related only to his protests to his superiors at work over being demoted in March 2007 "without due process," not to his filing of this lawsuit, he is precluded from raising this issue on appeal. Accordingly, his second assignment of error also is overruled.

{¶ 57} Mosley also argues that summary judgment for appellees on his claims of racial and gender discrimination was inappropriate, because the trial court indicated only "direct" evidence proved the elements of these

claims. However, even construing all of the evidence in the record most strongly in his favor, Mosley could not establish these claims.

{¶ 58} R.C. 4112.02(A) states:

{¶ 59} "It shall be an unlawful discriminatory practice:

{¶ 60} "(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 61} To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 1996-Ohio-265, 664 N.E.2d 1272. A litigant may use either the direct or the indirect method of proof. *Smith v. Greater Cleve. Regional Transit Auth.* (May 24, 2001), Cuyahoga App. No. 78274, citing *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 1996-Ohio-307, 672 N.E.2d 145.

{¶ 62} With respect to the indirect method of proof, the Ohio Supreme Court has adopted the analytical framework in cases involving claims of racial or gender discrimination that was established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668. *Blake v. Beachwood City Schools Bd. of Edn.*, Cuyahoga App. No. 95295, 2011-Ohio-1099, ¶18.

{¶ 63} Under that framework, a plaintiff-employee establishes a prima facie case of discrimination by producing evidence of each of the following elements: 1) he was a member of the statutorily protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position; and, 4) a comparable, non-protected person was treated more favorably. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023, citing *McDonnell Douglas.*

{¶ 64} Only after the plaintiff-employee establishes a prima facie case, does the burden shift to the defendant-employer to overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for adverse actions taken against the employee. Then if the employer meets this test, the plaintiff must show that the rationale set forth by the employer was only a pretext for unlawful discrimination.

{¶ 65} In this case, Mosley could not establish even the first prong of a claim of gender discrimination. He supplied nothing to the record that would support a conclusion that the agency treated women more favorably than men.

{¶ 66} Moreover, other than his self-serving affidavit, in which he merely repeated the allegations of his complaint, nothing in the record supports a conclusion that he was qualified for an SA position after his driver's license suspension. *Lindsay v. Children's Hosp. Med. Ctr. of Akron*, Summit App. No. 24114, 2009-Ohio-1216. Mosley admitted in his deposition testimony that as an SA, driving was an important aspect of the job.

{¶ 67} Furthermore, Mosley failed to show that he received disparate treatment in being demoted. Appellees submitted evidence that demonstrated that each of the other employees, of either gender and any race, who could not perform his or her job because of a driver's license suspension, was required to suffer some consequence comparable to Mosley's demotion. *Blake*.

{¶ 68} Based upon the evidence submitted, the trial court properly granted summary judgment to appellees on Mosley's claims of gender and racial discrimination. Mosley's third assignment of error, accordingly, is overruled.

{¶ 69} Mosley next argues that the trial court erred in granting summary judgment to appellees on Counts 3 and 8 of his complaint, because his claims of breach of employment contract and retaliation were independent

of his claims that he did not receive "due process."[3] His argument lacks merit.

{¶ 70} The employee handbook issued to Mosley clearly states that it "is not a contract either express or implied." The agency further "reserve[d] the right to change any provision without consultation."

{¶ 71} In addition, the evidence clearly demonstrated that, upon being informed that the agency planned to take disciplinary action against him for his failure to report his driver's license suspension, Mosley requested the agency treat it as a voluntary action on his part. The record fails to support a conclusion that the demotion constituted anything but an accommodation for his DUI conviction that was intended to be in both parties' best interest.

{¶ 72} Therefore, summary judgment on Mosley's claims of breach of contract and retaliation also was appropriate. Mosley's fourth assignment of error, accordingly, also is overruled.

{¶ 73} In his fifth assignment of error, Mosley asserts the trial court incorrectly held that appellees enjoyed sovereign immunity with respect to Counts 4 and 9 of his complaint. He cites R.C. 2744.09(B) in support of his assertion.

---

[3]Mosley thus appears to concede summary judgment in appellees' favor was appropriate on his violations of due process claims as set forth in Counts 5 and 10.

**{¶ 74}** In *Sampson v. Cuy. Metro. Housing Auth.,* 188 Ohio App.3d 250, 2010-Ohio-3415, 935 N.E.2d 98, ¶24, in a divided full-court opinion en banc, this court held that R.C. 2744.09(B) does not afford political subdivisions immunity from intentional torts. Nevertheless, the evidence in the record must support a conclusion that the plaintiff-employee established the elements of his claims in order to withstand summary judgment. Mosley presented the claims of both conspiracy and "outrageous conduct," i.e., intentional infliction of emotional distress.

**{¶ 75}** In order to establish a claim of conspiracy, the plaintiff must submit evidence to demonstrate there existed "a malicious combination of two or more persons" who had the intent to injure him "in person or property, in a way not competent for one alone," and that resulted in actual damages to him. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 1995-Ohio-61, 650 N.E.2d 863, citing *LeFort v. Century 21-Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640 and *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 196, 193 N.E.2d 280.

**{¶ 76}** Mosley presented no evidence to demonstrate his demotion resulted from either a "malicious conspiracy" or an underlying "unlawful act" by appellees. *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83; *Burns v. Rice*, 157 Ohio App.3d 620, 2004-Ohio-3228, 813 N.E.2d

His demotion, rather, resulted from his own conduct in driving in an intoxicated state. Simply put, when Mosley received a citation for this offense, he became ineligible to continue in his position as an SA. Appellees acted within their authority when they learned of his conviction to transfer him to a non-driving position. Finally, in asking for the transfer to be deemed a voluntary demotion, Mosley accepted their action.

{¶ 77} Similarly, the record does not support a conclusion Mosley demonstrated the elements of his claim of intentional infliction of emotional distress. A claim for intentional infliction of emotional distress requires proof of all of the following elements: 1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and, 4) the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 588 N.E.2d 280. Serious emotional distress requires an emotional injury that is both severe

and debilitating. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759.

**{¶ 78}** The evidence in the record demonstrates Mosley's problems on the job came from his own actions. After receiving his citation, he failed to report it to the HR department; only upon his conviction for DUI did he inform McLaughlin. At that point, McLaughlin's agency position required him to take steps to ensure Mosley was no longer driving agency vehicles.

**{¶ 79}** Mosley's subsequent failure to adjust to his new role as an Eligibility Specialist led to conflict with one of his co-workers. The inter-agency communications show Kuzmickas sought only to resolve the situation in the most sensible manner possible. Thus, the record contains a complete absence of "extreme and outrageous" conduct by appellees. *Mowery v. Columbus*, Franklin App. No. 05AP-266, 2006-Ohio-1153.

**{¶ 80}** Consequently, summary judgment on Mosley's claims of civil conspiracy and "outrageous conduct" also was warranted. Mosley's fifth assignment of error, accordingly, also is overruled.

**{¶ 81}** The trial court's orders are affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

JAMES J. SWEENEY, P.J., and
EILEEN A. GALLAGHER, J., CONCUR