**[Cite as *Vo v. Gorski*, 2021-Ohio-1957.]**

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHRIS VO,                                          :

      Plaintiff-Appellant,             :                    No. 109962


      v.                                       :

RICK GORSKI, ET AL.,                     :

      Defendants-Appellees.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED IN PART; DISMISSED IN PART
**RELEASED AND JOURNALIZED:** June 10, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-929135

---

### *Appearances:*

Chris Vo, *pro se.*

Dressman Benzinger LaVelle P.S.C., Kevin F. Hoskins and
Kathleen C. Tranter, *for appellees.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1}  Plaintiff-appellant Chris Vo, pro se, appeals from the trial court's

August 26, 2020 judgment entry granting the unopposed motion to dismiss filed by

defendants-appellees Rick Gorski, A&E Television Networks, L.L.C. ("A&E"), ITV

America Inc. improperly sued as ITV Creative/ITV America d/b/a LWT Enterprises Inc. (collectively, "ITV"), Tennessee Edwards, Robert Callow, Lynn Mohn Graham and Scott (Otto) Graham, Angelo D'Alessandro and Gene Schroeder (collectively, "appellees") and dismissing the case "without prejudice," as amended by the trial court's subsequent August 28, 2020 "nunc pro tunc" judgment entry dismissing the case "with prejudice."

{¶ 2} For the reasons that follow, we vacate the trial court's August 28, 2020 nunc pro tunc judgment entry dismissing the case with prejudice. With respect to Vo's appeal from the trial court's August 26, 2020 order dismissing the case without prejudice, we dismiss the appeal for lack of jurisdiction.

**Procedural and Factual Background**

{¶ 3} This case involves a dispute related to a home renovation project performed on Vo's residence (the "project") on Lakewood Heights Blvd. in Cleveland in conjunction with a "reality show" television program (the "show" or "program"), which was filmed for A&E.

### The Agreements Related to the Program

{¶ 4} In connection with the program and project, Vo entered into a "renovation agreement" with ITV pursuant to which it agreed to provide $28,028.25 for "infrastructure and related improvements" to the property.[1] Vo also entered into an "access and work scope agreement" with ITV and "its parents, affiliates, and

---

[1] The renovation agreement is not part of the record.

subsidiaries" relating to the project. The access and work scope agreement "document[ed] the entire understanding between the parties as to the filming of the home renovation project" as it related to a television program then designated as "'Untitled AETN Flip Show' * * * intended for initial exhibition on A&E."

{¶ 5} Pursuant to the access and work scope agreement (the "agreement"), although the decision as to which contractor to hire "remain[ed] solely" with Vo, the "design" of the project was to be "finalized and set forth" by ITV. In the agreement, Vo "acknowledge[d] and agree[d]" that ITV and A&E would "not be responsible for any loss or damage to any personal property or valuables at the [p]roperty" and that "[u]nless previously agreed to between [ITV] and [Vo], all aspects of the [p]roperty will be subject to change."

{¶ 6} Under the agreement, Vo permitted ITV (and its agents, servants and employees) access to his property to film and photograph the project. Vo also authorized ITV to place cameras and other recording devices on the property and acknowledged that he would "have no expectation of privacy in such locations" while such devices were present.[2]

---

[2] Vo also granted (1) ITV and A&E (and any of its assignees) "the right to incorporate all video and audio recordings into the final version of the [p]rogram (including the right to record any and all activities, conduct, and conditions occurring or existing on the [p]roperty, and the right to refer to the [p]roperty by its correct or any fictitious name) in any manner ITV and A&E require * * * and to exploit the [p]rogram * * * in any and all manner throughout the world in perpetuity" and (2) ITV and its "authorized representatives" the "exclusive right to utilize the recordings of the [p]roperty throughout the world in perpetuity in any manner or media now or hereafter known in connection with the [p]rogram."

{¶ 7} The agreement contained various waiver provisions, including a provision whereby Vo waived "any '[D]roit [M]oral' or any similar 'moral' rights" he may have had, and a separate "Waiver of Claims" clause that provided, in relevant part:

> The Homeowner agrees that it has no rights against Producer and Network, their agents, servants, and/or employees and that any and all rights which the Homeowner or their tenant has are derived solely from any express written warranties supplied by the manufacturers or suppliers of the materials donated to the Property. Further, the Homeowner acknowledges that it will participate in the completion of the Project and in so doing the Homeowner assumes the risk of injury or loss to the Homeowner's person or Property. If the Homeowner experiences such an injury or loss, then the Homeowner agrees that Producer and Network, its agents, servants, and/or employees, are hereby released and that the Homeowner waives any and all claims against Producer and Network, its agents, servants, and/or employees. Homeowner releases Producer, Network and all parent, sister and related entities of Producer and Network, all licensees, successors, assigns of Producer and Network, all distributors, exhibitors, stations, sponsors and advertising agencies of the Program or other program incorporating any audio and video recordings taken on or of the Property, and all of the officers, directors, agents, employees, and shareholders of each of the foregoing from any and all claims, demands, and costs arising from or related to any of the recordings made on the Property as contemplated herein. * * *

{¶ 8} The agreement contained a dispute resolution provision that required mediation, then arbitration in the County of New York administered by JAMS. It also contained an integration clause and a consent-to-jurisdiction and forum-selection provision that indicated that "[t]he parties hereby irrevocably consent to personal jurisdiction in the State of New York, with venue in the city of New York."

{¶ 9} The television program, which was ultimately titled, "Make My Neighbor Move," aired on A&E on March 27, 2018.

**The Litigation**

{¶ 10} On December 24, 2018, Vo, pro se, filed suit in the Cuyahoga County Court of Common Pleas (Cuyahoga C.P. No. CV-18-908801) against Gorski (a former owner of a nearby rental property), A&E, ITV, Edwards (a former producer for ITV, who was allegedly involved in negotiations for the project and the production of the show) and Angelo D'Alessandro and Gene Schroeder (Florida real estate brokers who allegedly "specialize[] in flipping"), asserting various claims related to the project and the show. On February 5, 2019, Vo filed a notice of voluntary dismissal without prejudice of the action.

{¶ 11} A little over a year later, on February 7, 2020, Vo, pro se, refiled the case, adding several additional defendants — two additional neighbors (Scott Graham and Lynn Graham), an additional television network (American Broadcasting Companies, Inc., incorrectly named ABC Studios ("ABC")), a local news affiliate (Scripps Media, Inc., incorrectly named "WEWS NewsChannel 5, Steve Weinstein, vice president and general manager ("WEWS")) and the assistant producer for the show (Robert Callow). A&E, ITV, Edwards, Callow and D'Alessandro and Schroeder are collectively referred to herein as the "ITV defendants."

**Vo's Allegations**

{¶ 12} Vo's allegations against ABC and WEWS related to a segment WEWS aired on its "News at Five" program in April 2016, which Vo claimed depicted his home in a negative light "with certain neighbors coached by Rick Gorski."

**{¶ 13}** Vo alleged that Gorski later contacted A&E and that, "[a]t the behest of Gorski," Edwards "opened communication" with Vo about doing a show involving his property. Vo alleged that Edwards represented to Vo that he could make Vo and his partner "stars" through the show when, "in reality," Edwards and ITV intended to make Vo "appear to be a blight on the neighborhood and portray him in a manner which would result in disrepute."

**{¶ 14}** Vo alleged that Edwards and ITV hid the name of the show from him, that the ITV defendants conspired to permit D'Alessandro and Schroeder to "flip" the property and destroy it and that Callow "coerced" Vo to "act against his will" and "[d]irected" Vo's partner "to say inflammatory lines" to Vo to cause discord between Vo and his partner "for the camera," which "carried over into their personal relationship."

**{¶ 15}** Vo claimed that the ITV defendants, Gorski and the Grahams participated in "a coordinated pattern of theft," stripping the property of trees, plants, gates, arches, stone pavers, large earthenware vessels, miniature lights, plastic flower arrangements and other "unique installations" Vo had created and placed on the property and then taking them or disposing of them. Vo alleged that these defendants "intentionally, maliciously and in wanton and reckless disregard" conspired to deprive Vo of his rights and ownership of the property and "jointly and severally" engaged in a "campaign of disinformation" to portray Vo in a false light and injure his reputation in the community.

{¶ 16} Vo averred that when he learned the name of the show, he refused to sign an appearance release and nondisclosure agreement and "begged" Edwards not to air the show — to no avail. Vo claimed the airing of the show caused him "extreme trauma and humiliation," a loss of clientele and health problems. Vo also claimed that the renovations performed were "substandard in plumbing, electrical and flooring * * * with many * * * remedies necessary for a safe and comfortable home."

{¶ 17} Vo requested (1) a declaration that the defendants' acts violated Vo's "rights and feelings" and (2) an award of "no less than" $775,000 in compensatory damages plus punitive damages, costs and attorney fees.

{¶ 18} On March 9, 2020, ABC and WEWS filed a motion to dismiss Vo's complaint with prejudice pursuant to Civ.R. 12(B)(6). They argued that (1) to the extent the complaint sought to assert claims of defamation or false light invasion of privacy against them, Vo's claims were time-barred and (2) Vo had failed to allege facts that otherwise supported a colorable legal claim against WEWS or ABC.

{¶ 19} On March 11, 2020, appellees filed a motion to dismiss Vo's claims pursuant to Civ.R. 12(B)(2), (3), (5) and (6), or, in the alternative, to compel arbitration. Appellees argued that Vo's complaint should be dismissed with prejudice because (1) Vo had waived or released all claims against the defendants in the access and work scope agreement;[3] (2) the trial court lacked personal

---

[3] Appellees argued that the agreement "evidence[d] a clear and specific intent" to waive the claims Vo had asserted against ITV (as the producer), A&E (as the network) and Edwards, Callow, Schroeder, D'Alessandro, Gorski and the Grahams (as "their agents, servants, and/or employees"). It is not entirely clear, based on the allegations of the complaint, what relationship Schroeder and D'Alessandro had to ITV and/or A&E.

jurisdiction over the out-of-state defendants (A&E, ITV, Edwards, Callow, D'Alessandro and Schroeder); (3) Vo had failed to properly serve some or all of the defendants; (4) venue in Cuyahoga County was improper pursuant to the forum selection provision in the access and work scope agreement and (5) Vo had failed to plead sufficient facts to state a claim for fraud or civil conspiracy against any of the defendants. In the alternative, appellees requested that the case be dismissed "so that Vo can refile the matter for arbitration with JAMS in New York, New York" in accordance with the arbitration provision in the access and work scope agreement.

{¶ 20} In support of their motion, appellees submitted a copy of the access and work scope agreement, which had been incorporated by reference in Vo's complaint, but had not been attached to the complaint as required by Civ.R. 10(D)(1).

{¶ 21} On March 20, 2020, Vo filed a motion for continuance, requesting a 60-day extension of time to respond to the defendants' motions to dismiss so that he could obtain legal counsel. The trial court granted Vo's request for a continuance to obtain legal counsel but stated that his request for additional time to respond to the pending motions was moot given the Ohio Supreme Court's March 27, 2020 Administrative Actions Order, which tolled deadlines through July 30, 2020. The trial court stated that Vo was to obtain legal counsel prior to the case management conference scheduled for August 6, 2020.

However, there is nothing in the complaint to suggest that Gorski or the Grahams were "agents, servants, and/or employees" of ITV or A&E.

**{¶ 22}** On August 5, 2020, Vo filed a motion for a further 14-day extension "to reassert the claim with legal counsel." At a telephonic case management conference the following day, the trial court granted Vo an additional "14 days' leave" to obtain legal counsel and respond to defendants' pending motions to dismiss. In its August 6, 2020 order, the trial court stated that "[n]o further extension will be granted."

**{¶ 23}** On August 21, 2020, Vo filed a "motion for reconsideration for more time to retain legal counsel" requesting that the trial court "reconsider granting additional time" to enable him "to retain proper legal counsel." Vo asserted:

> Due to these unexpected times with being unable to physically meet with prospective attorneys in person, I had more difficulty than expected in gaining legal counsel. I was given hope that a law firm was onboard until the last minute it did not work out. I can provide the court with a list of those who I have been communicating with to provide me with legal counsel. I am very close and hope that the parties now reviewing my case will undertake this complaint and become my attorney of record in a reasonable time.

The defendants opposed the motion.

**{¶ 24}** On August 26, 2020, the trial court denied Vo's motion for reconsideration, stating:

> As plaintiff has previously been granted continuances to obtain counsel and respond to defendants' motions to dismiss, first on 04/09/2020, and again on 08/06/2020, and as plaintiff had been warned on 08/06/2020 that no further extensions would be granted, plaintiff's motion for reconsideration for more time to obtain legal counsel, filed 08/21/2020, is denied.

**{¶ 25}** That same day, the trial court also entered an order granting the defendants' motions to dismiss, stating as follows: "Defendants' motions to dismiss,

filed 03/09/2020 and 03/11/2020 respectively, are granted. Case dismissed *without prejudice*. Final." (Emphasis added.)

{¶ 26} Two days later the trial court, sua sponte, entered a "nunc pro tunc entry" as and for its August 26, 2020 judgment entry, stating: "Defendants' motions to dismiss, filed 03/09/2020 and 03/11/2020 respectively, are granted. Case dismissed *with prejudice*. Final." (Emphasis added.) No explanation was provided for the issuance of the nunc pro tunc order.

{¶ 27} Vo appealed, raising the following six assignments of error for review:

Assignment of Error No. 1: The trial court erred in granting the Motions to Dismiss filed by Defendants-Appellees pursuant to Civ.R. 12(B)(6).

Assignment of Error No. 2: The trial court erred in granting the Motions to Dismiss filed by A&E Defendants[4] pursuant to Civ.R. 12(B)(2).

Assignment of Error No. 3: The trial court erred in granting the Motions to Dismiss filed by A&E Defendants pursuant to Civ.R. 12(B)(3).

Assignment of Error No. 4: The trial court erred in granting the Motions to Dismiss filed by A&E Defendants pursuant to Civ.R. 12(B)(5).

Assignment of Error No. 5: The trial court erred in dismissing Mr. Vo's claims with prejudice.

Assignment of Error No. 6: The trial court erred in failing to compel arbitration and stay the case as requested by A&E Defendants in their Motion to Dismiss.

---

[4] Vo defines the "A&E Defendants" as including all remaining appellees.

**{¶ 28}** On November 3, 2020, Vo filed a motion to dismiss the appeal as to ABC and WEWS. This court granted the motion.

**Law and Analysis**

### Trial Court's Nunc Pro Tunc Order

**{¶ 29}** For ease of discussion, we address Vo's fifth assignment of error first. In his fifth assignment of error, Vo argues that the trial court erred in entering its August 28, 2020 nunc pro tunc order, sua sponte, converting its prior dismissal "without prejudice" into a dismissal "with prejudice" because (1) dismissals for lack of personal jurisdiction pursuant to Civ.R. 12(B)(2), for insufficiency of service of process pursuant to Civ.R. 12(B)(5) and for failure to allege with particularity all of the elements of a claim pursuant to Civ.R. 12(B)(6) are dismissals without prejudice and (2) a dismissal for improper venue under Civ.R. 12(B)(3) "does not procedurally exist."

**{¶ 30}** Appellees respond that "Vo's brief ignores the real reason for the Court's dismissal," i.e., that "the trial court dismissed Vo's Complaint because he failed to comply with the [trial court's] orders" and procedural rules. Appellees assert that the trial court's decision should be affirmed "based on Vo's failure to comply with the court-ordered deadlines" to respond to the defendants' motions to dismiss and to obtain counsel. The trial court's August 26, 2020 order clearly indicates that the trial court dismissed the case because it "grant[ed]" the defendants' motions to dismiss, not because of Vo failed to comply with the trial court's orders or procedural rules. Further, where a trial court dismisses an action

pursuant to Civ.R. 41(B)(1) for failure to prosecute or to comply with the civil rules or a court order, the trial court must give prior notice, which does not appear to have occurred here. *See* Civ.R. 41(B)(1).

{¶ 31} However, based on our review of the record, we find that the trial court erred in using a nunc pro tunc order to modify its dismissal "without prejudice" to a dismissal "with prejudice."

{¶ 32} This court has previously explained the use of nunc pro tunc entries as follows:

> "A nunc pro tunc order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth. It is used to record that which the trial court did, but which has not been recorded. It is an order issued now, which has the same legal force and effect as if it had been issued at an earlier time, when it ought to have been issued. Thus, the office of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time. It can be used to supply information which existed but was not recorded, to correct mathematical calculations, and to correct typographical or clerical errors.
>
> A nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide. Its proper use is limited to what the trial court actually did decide."

*Alden v. FirstEnergy Corp.*, 8th Dist. Cuyahoga No. 100575, 2014-Ohio-3235, ¶ 10, quoting *Scaglione v. Saridakis,* 8th Dist. Cuyahoga No. 91490, 2009-Ohio-4702, ¶ 9.

> The trial court's use of a nunc pro tunc entry is restricted to placing upon the record evidence of judicial action that has been actually taken; thus, it can be exercised only to supply omissions in the exercise of merely clerical functions. *Jacks v. Adamson*, 56 Ohio St. 397, 402, 47 N.E. 48 (1897). The function of nunc pro tunc is not to change, modify,

or correct erroneous judgments, but, rather, to have the record speak the truth. *Ruby v. Wolf*, 39 Ohio App. 144, 177 N.E. 240 (1931); *Dentsply Internatl., Inc. v. Kostas*, 26 Ohio App.3d 116, 498 N.E.2d 1079 (8th Dist.1985). A court may not, therefore, by way of a nunc pro tunc entry, enter of record that which it intended but, in fact, was not made. *Pepera v. Pepera*, 8th Dist. Cuyahoga Nos. 51989 and 52024, 1987 Ohio App. LEXIS 6807 (Mar. 26, 1987), quoting *Myers v. Shaker Hts.*, 8th Dist. Cuyahoga Nos. 57005 and 58056, 1990 Ohio App. LEXIS 2278 (June 7, 1990).

*Mosley v. Cuyahoga Cty. Bd. of Mental Retardation*, 8th Dist. Cuyahoga No. 96070, 2011-Ohio-3072, ¶ 44. In short, a trial court cannot use a nunc pro tunc order "as a vehicle for changing its decision." *Alden* at ¶ 12.

**{¶ 33}** Civ.R. 60(A) governs the issuance of nunc pro tunc orders. *See, e.g., Karnes v. Karnes*, 8th Dist. Cuyahoga No. 94521, 2010-Ohio-4016, ¶ 34 ("'The common law rule giving courts the power to enter nunc pro tunc orders has been codified by Civ.R. 60(A).'"), quoting *Norris v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP762, 2006-Ohio-1750, ¶ 12; *McGowan v. Giles*, 8th Dist. Cuyahoga No. 76332, 2000 Ohio App. LEXIS 1006, 9, 13 (Mar. 16, 2000) ("Absent compliance with Civ.R. 60(A), the use of nunc pro tunc was improper.").

**{¶ 34}** Civ.R. 60(A) permits a court, in its discretion, to, sua sponte, correct "clerical mistakes" and "errors * * * arising from oversight or omission." It provides, in relevant part:

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders.

{¶ 35} Civ.R. 60(A) does not, however, authorize a trial court to make substantive changes in judgments. *See, e.g., State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100, 671 N.E.2d 236 (1996) ("Civ.R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments."). As used in Civ.R. 60(A), a "clerical mistake" is a "mistake or omission mechanical in nature which is apparent on the record and which does not involve a legal decision or judgment." *Id.*; *see also Dentsply Internatl., Inc. v. Kostas*, 26 Ohio App.3d 116, 118, 498 N.E.2d 1079 (8th Dist.1985) ("[A] court has the power to correct a clerical error pursuant to Civ. R. 60(A). However, this rule is applied to inadvertent clerical errors only, * * * and cannot be used to change something which was deliberately done.") (emphasis deleted); *Myers v. Shaker Hts.*, 8th Dist. Cuyahoga Nos. 57005 and 58056, 1990 Ohio App. LEXIS 2278, 9 (June 7, 1990) ("A trial court is without jurisdiction to modify an order dismissing a cause with prejudice to one without prejudice, unless the requirements of Civ.R. 60 are met.") (emphasis deleted).

{¶ 36} "'The basic distinction between clerical mistakes that can be corrected under Civ.R. 60(A) and substantive mistakes that cannot be corrected is that the former consists of "blunders in execution," whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner.'" *Karnes*, 2010-Ohio-4016, at ¶ 36, quoting *Kuehn v. Kuehn*, 55 Ohio App.3d 245, 247, 564 N.E.2d 97 (12th Dist.1988);

*Dickerson v. Cleveland Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 96726, 2011-Ohio-6437, ¶ 11, citing *RPM, Inc. v. Oatey Co.*, 9th Dist. Medina No. 2745-M, 1998 Ohio App. LEXIS 5862, 2-4 (Dec. 9, 1998) (sua sponte order vacating summary judgment was not a nunc pro tunc order authorized by Civ.R. 60(A); trial court could not change its mind, sua sponte, simply because it determined that it should have waited until discovery was completed before granting summary judgment). "[T]he proper use of Civ.R. 60(A) is to make changes in judgments to reflect what, in fact, was really decided by the trial court. In effect, the relief afforded by Civ.R. 60(A) is the judgment actually rendered by the court." *Binder v. Binder*, 8th Dist. Cuyahoga No. 88468, 2007-Ohio-4038, ¶ 8.

{¶ 37} In determining whether a nunc pro tunc order is proper under Civ.R. 60(A), "'[i]t is the nature of the correction, rather than the effect of the correction'" that must be examined, i.e., "'a modification cannot be characterized as an improper substantive modification'" simply "'by virtue of its effects.'" *In re Schenker*, 11th Dist. Trumbull No. 2020-T-0032, 2021-Ohio-1018, ¶ 14, quoting *Bloom v. Bloom*, 11th Dist. Trumbull Nos. 2019-T-0078 and 2019-T-0080, 2020-Ohio-4107, ¶ 39. Furthermore, "[c]lerical errors in the form of dismissals will not be lightly presumed" and "will be subject to review on a case-by-case basis." *Mekkar v. Casserlie*, 8th Dist. Cuyahoga No. 79756, 2002 Ohio App. LEXIS 118, 5 (Jan. 17, 2002).

{¶ 38} In this case, there is nothing in the record that shows that the trial court's nunc pro tunc order, entered two days after the trial court's original order,

sought to correct "a mistake or omission mechanical in nature" or an "error * * * arising from oversight or omission." Civ.R. 60(A). There is nothing in the record that suggests that, prior to the issuance of the August 26, 2020 order, the trial court had actually decided to dismiss Vo's complaint with prejudice and then inadvertently indicated that the case was dismissed without prejudice in its August 26, 2020 order. In its August 26, 2020 order, the trial court summarily granted defendants' motions to dismiss with no explanation of the bases for its rulings. The trial court's August 28, 2020 nunc pro tunc order makes no reference to Civ.R. 60(A) and does not explain why the nunc pro tunc order was entered.

{¶ 39} As stated above, a nunc pro tunc order cannot be used to "correct" a judgment to reflect what the court might or should have done or intended to do. Its proper use is limited to implementing what the trial court actually did. Without some indication in the record that the trial court had actually decided that the case would be dismissed with prejudice and that, due to a clerical mistake or some other similar error of oversight or omission, inadvertently indicated in its August 26, 2020 order that the case was dismissed without prejudice, the trial court's August 28, 2020 nunc pro tunc entry was improper under Civ.R. 60(A). *See, e.g., Menti v. Joy*, 8th Dist. Cuyahoga No. 65706, 1994 Ohio App. LEXIS 4718, 15-16 (Oct. 20, 1994) ("'Absent something tangible, evincing a past error, the court cannot utilize a nunc pro tunc entry to alter the record. Accepting the [contrary] position would enable the court to add to or delete from the record at any time, based on a mere assertion that the change is a truthful manifestation of its previous intent. This we refuse to

do.'"), quoting *State v. Hawk*, 81 Ohio App.3d 296, 301, 610 N.E.2d 1082 (9th Dist.1992); *McGowan*, 2000 Ohio App. LEXIS 1006, at 13 (nunc pro tunc order could not be used to "correct" final order from a dismissal with prejudice to a dismissal without prejudice where the record "reflect[ed] no reason for the subsequent nunc pro tunc modification of the order * * * other than to correct the prior final order"); *Alden*, 2014-Ohio-3235, at ¶ 11-13 (trial court erred in issuing nunc pro tunc order converting dismissal with prejudice into dismissal without prejudice where "the surrounding facts," including that the trial court had warned plaintiff her case would be dismissed "with prejudice" if she failed to appear at pretrial and defendant's motion, which the trial court granted, requested that the dismissal be with prejudice, "indicate[d] that the trial court dismissed the case with prejudice"); *but see Mekkar*, 2002 Ohio App. LEXIS 118, at 2-3, 5-6 (trial court could properly use a nunc pro tunc entry to correct a previously entered dismissal "with prejudice" final order to a dismissal "without prejudice" final order where the trial court stated, in its nunc pro tunc entry modifying the dismissal "with prejudice" to a dismissal "without prejudice," that "upon motion of the [d]efendant's counsel, the matter was dismissed without prejudice," but that an order "containing the 'with prejudice' language" was "inadvertently adopted by the Court"); *Karnes*, 2010-Ohio-4016, ¶ 2, 37-38 (nunc pro tunc entry that stated that motion to modify the parties' property division was dismissed "with prejudice" rather than "without prejudice" was authorized under Civ.R. 60(A) where language of original judgment

entry "support[ed] a conclusion that it contained blunders in execution" and "made no sense" if motion was being dismissed "without prejudice").

{¶ 40} As a general matter, whether a dismissal is with prejudice or without prejudice involves decision making by the trial court. Given the absence of anything in the record to suggest that the trial court's August 26, 2020 order dismissing the case without prejudice was the result of a clerical mistake or other similar oversight or omission, we find that the trial court's August 28, 2020 order was not a proper nunc pro tunc entry and was not authorized under Civ.R. 60(A).

{¶ 41} Vo's fifth assignment of error is sustained. We vacate the trial court's August 28, 2020 nunc pro tunc entry.

### Trial Court's Decision Granting Motion to Dismiss and Dismissing Case Without Prejudice

{¶ 42} In his first, second, third, fourth and sixth assignments of error, Vo makes various arguments as to why the trial court erred in granting appellees' motion to dismiss and/or in failing to compel arbitration and stay the case pending arbitration.[5] Because Vo did not file an opposition to appellees' motion to dismiss, Vo raises these arguments for the first time on appeal.

{¶ 43} Having vacated the trial court's August 28, 2020 nunc pro tunc entry, we are left with the trial court's August 26, 2020 judgment entry dismissing the case

---

[5] Although captioned a "motion for reconsideration," Vo's "motion for reconsideration for more time to retain legal counsel" was essentially a request for additional time to obtain legal counsel to assist in the prosecution of the case. Vo did not raise the trial court's denial of his August 21, 2020 "motion for reconsideration for more time to retain legal counsel" as one of his assignments of error.

without prejudice. Our appellate jurisdiction is limited to reviewing judgments and orders that are final, appealable orders. *See* Article IV, Section 3(B)(2), Ohio Constitution; R.C. 2505.02 and 2505.03. "If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter and the appeal must be dismissed." *Assn. of Cleveland Firefighters, # 93 v. Campbell*, 8th Dist. Cuyahoga No. 84148, 2005-Ohio-1841, ¶ 6. This court has a duty to examine, sua sponte, potential deficiencies in jurisdiction. *See, e.g., Scheel v. Rock Ohio Caesars Cleveland, L.L.C.*, 8th Dist. Cuyahoga No. 105037, 2017-Ohio-7174, ¶ 7; *Arch Bay Holdings, L.L.C., v. Goler*, 8th Dist. Cuyahoga No. 102455, 2015-Ohio-3036, ¶ 9; *see also Scanlon v. Scanlon*, 8th Dist. Cuyahoga No. 97724, 2012-Ohio-2514, ¶ 5 ("In the absence of a final, appealable order, the appellate court does not possess jurisdiction to review the matter and must dismiss the case sua sponte.").

{¶ 44} In general, a trial court's dismissal of a matter without prejudice is not a final, appealable order. *See, e.g., Lakeview Holding (OH), L.L.C., v. Farmer*, 2020-Ohio-3891, 156 N.E.3d 980, ¶ 18, 20 (8th Dist.), citing *Natl. City Commercial Capital Corp. v. AAAA at Your Serv., Inc.*, 114 Ohio St.3d 82, 2007-Ohio-2942, 868 N.E.2d 663, ¶ 8 ("Ordinarily, a dismissal 'otherwise than on the merits' does not prevent a party from refiling and, therefore, * * * such a dismissal is not a final, appealable order."); *see also State ex rel. DeDonno v. Mason*, 8th Dist. Cuyahoga Nos. 95431 and 95498, 2010-Ohio-4903, ¶ 6 ("[A] dismissal without prejudice is generally not appealable even if it is final."); *Vaught v. Pollack*, 8th Dist. Cuyahoga No. 103819, 2016-Ohio-4963, ¶ 21 ("'[G]enerally an involuntary dismissal without

prejudice is not a final appealable order. * * * Courts hold as such because a dismissal without prejudice leaves the parties in the same position they were in prior to the action being filed; the action is treated as though it had never been commenced."'), quoting *Selmon v. Crestview Nursing & Rehab. Ctr., Inc.*, 184 Ohio App.3d 317, 2009-Ohio-5078, 920 N.E.2d 1017, ¶ 2 (7th Dist.).

{¶ 45} Vo has not argued that an exception to this rule applies — to the contrary, he specifically argued in his appellate brief that the trial court's dismissal should have been without prejudice so that he could "refile his fraud claims within the applicable statute of limitations," which had not yet run — and we find nothing in the limited record before us to indicate that an exception applies. Accordingly, based on our resolution of Vo's fifth assignment of error, we lack jurisdiction to consider Vo's first, second, third, fourth and sixth assignments of error. We dismiss this appeal to the extent it challenges the trial court's dismissal without prejudice.

{¶ 46} Judgment vacated in part; appeal dismissed in part.

It is ordered that appellant and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule

27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
LISA B. FORBES, J., CONCUR